U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 APR 30 PM 1:49

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

C.M., )
)
    Plaintiff, )
)
v. ) Case No. 5:12-cv-108
)
FLETCHER ALLEN HEALTH CARE, INC., )
and the FLETCHER ALLEN PREFERRED )
PLUS MEDICAL PLAN, )
)
    Defendants. )

**ENTRY ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS**
(Doc. 7)

This matter comes before the court on the motion to dismiss filed by Defendants Fletcher Allen Health Care, Inc. and the Fletcher Allen Preferred Plus Medical Plan ("the Plan") (collectively "Fletcher Allen"). (Doc. 7.) Fletcher Allen seeks dismissal of Counts One through Three of Plaintiff's Complaint, arguing that Plaintiff's factual allegations do not give rise to a plausible claim that Fletcher Allen violated the Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), 29 U.S.C. § 1185a, by imposing treatment limitations on mental health or substance abuse benefits ("mental health benefits") that are not imposed on analogous medical and surgical benefits ("medical benefits"). Fletcher Allen moves to dismiss Count Four on the grounds that it alleges a waiver of a non-waivable medical necessity review. It seeks dismissal of a portion of Count Five, contending that Plaintiff has not exhausted her administrative remedies as to all of the adverse medical necessity determinations for which she seeks relief. Finally, it moves to dismiss Count Six, arguing that Plaintiff does not have third-party standing to bring a retaliation claim on behalf of her mother. Plaintiff opposes the motion.

The court heard oral argument on the pending motion on November 14, 2012. Fletcher Allen requested and was granted an opportunity to file post-argument briefing which was timely submitted on December 17, 2012.

Plaintiff is represented by Alison J. Bell, Esq. Fletcher Allen is represented by Linda J. Cohen, Esq.

## I. Factual Background.

The relevant facts are derived from the allegations and documents referenced in Plaintiff's Complaint. Plaintiff is a twenty-five year old woman residing in New York and is a participant in the Plan. Fletcher Allen administers the Plan directly, but has contracted with Vermont Managed Care, Inc. ("VMC") to administer claims for medical benefits, and with CIGNA Behavioral Health, Inc. ("CIGNA") to administer claims for mental health benefits.

### A. CIGNA's Denial of Plaintiff's Requested Mental Health Treatment.

Plaintiff alleges that, at all relevant times, she suffered from severe and chronic mental health issues. Commencing in approximately January of 2011, Plaintiff engaged in outpatient psychotherapy sessions four times per week with Anna Balas, M.D. This treatment was supplemented by medication management provided by Robert Scharf, M.D. Neither Dr. Balas nor Dr. Scharf is or was a provider within the CIGNA network. Plaintiff alleges that her treatment providers have "unanimously opined that ongoing psychotherapy at a minimum rate of four times per week, coupled with medication management, is medically necessary." (Doc. 1 at ¶ 20.)

Plaintiff's treatment was initially covered by the Plan, and she has not alleged that she was required to obtain prior authorization before receiving coverage for her psychotherapy sessions with Dr. Balas or her medication management with Dr. Scharf. On February 28, 2011, CIGNA sent a letter to Dr. Balas stating that:

> [M]ost Cigna customers complete routine outpatient treatment in 8 sessions. Should claims exceed 25 sessions for this customer [C.M.], a case review based on medical necessity and the benefit plan design will be necessary. In addition, at that point, claim payment for this customer will

be pulled from the automatic process and require prior authorization for additional sessions.

*Id.* at ¶ 52.

Despite CIGNA's assertion that it would conduct a case review of Plaintiff's psychotherapy treatment after twenty-five sessions, CIGNA did not conduct a case review until June 7, 2011, "some six months after [Plaintiff] had begun receiving treatment four times per week." *Id.* at ¶ 21. On June 8, 2011, CIGNA denied Plaintiff's request to continue receiving treatment four times per week, asserting that such treatment was not "medically necessary." *Id.* at ¶ 22. Instead, CIGNA prospectively authorized one psychotherapy session per week for the period from June 7, 2011 until December 7, 2011. On June 14, 2011 and October 17, 2011, CIGNA denied Plaintiff's "Level 1 and Level 2" administrative appeals of its determination that four sessions per week were not medically necessary. *Id.* at ¶ 23.

### B. Statutory and Regulatory Provisions of the Parity Act.

The Parity Act provides that "a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits" is required to:

> ensure that the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii). "The term 'treatment limitation' includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id.* § 1185a(a)(3)(B)(iii).

The Parity Act has been implemented by regulations, which classify all treatment limitations within four categories: "(1) [i]npatient, in-network"; "(2) [i]npatient, out-of-network"; "(3) [o]utpatient, in-network"; and "(4) [o]utpatient, out-of-network." 29 C.F.R. § 2590.712(c)(2)(ii). The Regulations provide that treatment limitations "include both quantitative treatment limitations, which are expressed numerically (such as 50

3

outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan." *Id.* § 2590.712(a). "Nonquantitative treatment limitations include . . . [m]edical management standards limiting or excluding benefits based on medical necessity[.]" *Id.* § 2590.712(c)(4)(ii)(a). The Regulations provide that to remain in conformity with the Parity Act, a plan:

> may not impose a non-quantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical surgical/benefits in the classification, except to the extent that recognized clinically appropriate standards of care may permit a difference.

*Id.* § 2590.712(c)(4)(i).

Where a plan "limits benefits to treatment that is medically necessary[,]" the relevant "nonquantitative treatment limitation" is the requirement of "medical necessity." *See id.* § 2590.712(c)(4)(iii). The Regulations categorize "prior approval" and "concurrent review" as "processes" used in applying a nonquantitative treatment limitation, such as medical necessity. *Id.* In addition, the Regulations refer to the processes by which a plan determines whether "the number of visits or days of coverage" requested by a participant are excessive, as "evidentiary standards used in determining whether a treatment is" in conformity with the relevant nonquantitative treatment limitation, such as the requirement of medical necessity.

### C. The Plan's Written Policies and Fletcher Allen's Actual Practices.

Plaintiff's Complaint alleges violations of the Parity Act, asserting that the Plan's written policies and actual practices governing mental health benefits and medical benefits are impermissibly different. Specifically, the Complaint alleges that the Plan, by its terms and in practice, requires pre-approval for all routine, out-of-network mental health services, but not for routine, out-of-network medical services. The Complaint also alleges that the Plan, by its terms and in practice, conducts concurrent reviews of ongoing

4

routine, out-of-network mental health services while not requiring such reviews for routine, out-of-network medical services. Finally, the Complaint alleges that the Plan, by its terms and in practice, initiates an automatic review process of routine, out-of-network mental health services after a fixed number of patient visits, while it does not initiate a similar review process for routine, out-of-network medical services.

To support the claim that the Plan applies impermissibly different standards by its terms, the Complaint references the Fletcher Allen Preferred Plus Medical Plan, Plan Document, Revised Effective January 2011 (the "Plan Document") (Doc. 7-1.) The Complaint also references two websites which contain documents drafted by VMC and CIGNA, respectively. *See* Doc. 1 at ¶ 32 (referencing VMC "Utilization Management Plan," VMC, Utilization Management Plan (2011), http://www.vermontmanagedcare.org /Contribution/Providers/Provider_Manual/Manual_PDFs/UM.pdf (the "VMC Plan")); (Doc. 1 at ¶ 35) (referencing CIGNA "Level of Care Guidelines," CIGNA, CIGNA Medical Necessity Criteria: For Treatment of Behavioral Health and Substance Use Disorders (2012), http://www.cignabehavioral.com/web/basicsite/provider/pdf/levelOf CareGuidelines.pdf (the "CIGNA Guidelines")).[1] The documents referred to in the websites supplement the Plan Document which states that "it does not contain all details of medical policy that guide utilization review decisions. Those are available upon request from [VMC or CIGNA]." (Doc. 7-1 at 3.)

---

[1] Because the referenced websites are incorporated by reference in the Complaint, they may be considered on a motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) ("Some of the facts are drawn from the Court's own review of [a referenced] website. Because the website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss."); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 319 & n.1 (S.D.N.Y. 2006) (considering a website on a judgment on the pleadings where the website was incorporated by reference in the complaint). The parties do not challenge the authenticity of the VMC Plan and CIGNA Guidelines websites referenced in the Complaint and both parties rely on the websites in their briefs. (Doc. 16 at 15); (Doc. 24 at 4-5.)

## II. Legal Analysis and Conclusions.

### A. Standard of Review.

When assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The court need not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In its analysis, the court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

To survive a motion to dismiss, a claim must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a claim, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555-56.

Neither *Iqbal* nor *Twombly* impose "heightened" pleading standards. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010) (rejecting a "heightened pleading standard" under *Iqbal/Twombly* and also rejecting the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at

6

556-57). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering whether the alleged facts "nudge" the plaintiffs' claims from merely "speculative" to "plausible," courts are instructed to rely on common sense, and to consider "obvious alternative explanations" to the plaintiffs' theory of liability. *See Twombly*, 550 U.S. at 567. However, the courts are not empowered to weigh the evidence, assess credibility, and choose the explanation they believe is most worthy of belief. *See Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009) ("[A] complaint should only be dismissed at the pleading stage where the allegations are so broad, and the alternative explanations so overwhelming, that the claims no longer appear plausible.").

## B. Whether Plaintiff Alleges Plausible Violations of the Parity Act.

In Counts One through Three, Plaintiff alleges that Fletcher Allen violated the Parity Act by imposing, both in writing and in practice, more stringent reviews for mental health benefits than are imposed for medical benefits. In Counts One and Two, respectively, she alleges that CIGNA conducts prospective and concurrent medical necessity reviews of routine, outpatient, out-of-network mental health office visits while VMC conducts no such reviews for comparable medical office visits. In Count Three, she alleges that unlike VMC, CIGNA imposes a numeric cap on the number of routine outpatient visits participants may request before pre-approval is required for all subsequent medical necessity reviews.

In seeking dismissal, Fletcher Allen asks the court to compare the various provisions of the Plan, the VMC Plan, and the CIGNA guidelines in order to decide, as a matter of law, whether the Plan contains impermissible differences under the Parity Act. It argues that "[w]hen read correctly, by giving meaning to the entirety of the documents and interpreting words according to their ordinary meanings, these documents demonstrate the implausibility of [Plaintiff's] claims." (Doc. 24 at 5.) Fletcher Allen cites no authority for the proposition that this is a proper exercise on a motion to dismiss where the provisions in question are not identical but must be weighed and evaluated against one another and considered in the context of the treatment they govern. *See*

7

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (when faced with a motion to dismiss for failure to state a claim, the court's task is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."). Assuming arguendo that the parties have provided the Plan's complete terms and conditions, the various documents do not readily yield a point-by-point comparison or an unambiguous conclusion that a disparity does or does not exist. *See Z.D. v. Group Health Cooperative*, 2013 WL 1412388, at *2 (W.D. Wash. April 8, 2013) (comparing plan provisions to determine whether parity exists between rehabilitative benefits and benefits for mental health disorders and noting that although the court "does not endorse the selection of narrow comparators to assess coverage requirements under the [state's parity] Act" such a comparison is appropriate on summary judgment because "exactly the same therapies" are at issue so that "the selection of narrow comparators to assess coverage requirements" is appropriate). Moreover, Fletcher Allen all but ignores Plaintiff's further claim that the manner in which the Plan's provisions are implemented also violates the Parity Act. *See* 54 C.F.R. § 2590.712(c)(4)(i) (for non-quantitative treatment limitations, "the terms of the plan as written and in operation" must comply with the Parity Act). Fletcher Allen thus essentially asks the court to find, under the guise of adhering to the language of the Plan, that the alleged differences in actual practices did not take place. Such a finding has no place in ruling on a motion to dismiss. *See Roth*, 489 F.3d at 509 ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").

    Fletcher Allen seeks to overcome the hurdles to dismissal at the pleading stage by arguing that Plaintiff must affirmatively establish that any difference between the Plan's provisions governing mental health and medical benefits is not attributable to "recognized clinically appropriate standards of care" which permit those differences. 29 C.F.R. § 2590.712(c)(4)(i) (providing that the Parity Act allows differences in service limitations "to the extent that recognized clinically appropriate standards of care may permit a difference."). It argues that in the absence of such proof, Plaintiff has "half pled" the case and her claims must be dismissed. (Doc. 7 at 2.)

Fletcher Allen cites no authority for the contention that the Parity Act places the burden of proof *on patients* to demonstrate the absence of "recognized clinically appropriate standards of care [that] may permit a difference," nor would it make sense for the burden of proof to be allocated in this manner. Especially at the pleading stage, patients are unlikely to be aware of the potential range of "recognized clinically appropriate standards of care" which may give rise to a difference in how mental health and medical services are treated and thus they would be left to speculate as to the clinical reasons for a particular disparity. Nothing in the Parity Act supports a conclusion that the burden of proof is allocated in this manner.

Far more persuasive is Plaintiff's argument that this is an affirmative defense that Fletcher Allen must establish in order to justify any difference. As Plaintiff points out, the Parity Act was promulgated to eliminate impermissible disparity in the benefits afforded for mental health and substance abuse disorders when compared to those afforded to medical/surgical conditions. The Parity Act and its regulations impose the burden upon the *plan administrator* to provide plan participants and beneficiaries with the criteria for medical necessity determinations, an explanation for any denial of reimbursement or payment for services, and the reasons for claim denial. *See* 29 U.S.C. § 1185a(a)(4); 25 C.F.R. §§ 2590.712(d)(1) & (2); 2560.503-1(g)(1); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA establishs an "elaborate scheme" for enabling beneficiaries to learn about their rights and obligations under an ERISA plan which starts with "reliance on the face of written plan documents." ). It stands to reason that plan administrators would also bear the burden of establishing, under the Parity Act, why mental health and medical benefits are treated differently based upon divergent clinical standards. *See Federal Trade Commission v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) (holding "[t]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 93 (2008) (ruling that when a statute "exempt[s] otherwise illegal conduct by reference to a

9

further item of proof," it creates "a defense for which the burden of persuasion falls on the 'one who claims its benefits.'").

Where, as here, an ERISA plan is at issue, it is the insurer rather than the insured who ordinarily must sustain the burden of establishing that an exclusion applies. *See Critchlow v. First UNUM Life Ins. Co. of America*, 378 F.3d 246, 256 (2d Cir. 2004) (holding that "[i]f there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer," an "exclusion clause should be read narrowly rather than expansively" and "the insurer has the burden of proving that an exclusion applies."). Fletcher Allen provides no explanation as to why this well-established principle should be turned on its head by the Parity Act.

Finally, Fletcher Allen has not, itself, established that "recognized clinically appropriate standards of care" permit the differences in the Plan's treatment of mental health and medical benefits identified in Counts One through Three of the Complaint. Nor has Fletcher Allen established that a comparison of the various Plan provisions governing mental health and medical benefits reveals no relevant differences. Instead, it merely argues that the court should conclude that, as matter of law, any differences are not material. The court cannot and does not reach this conclusion on the record before it.

For the foregoing reasons, Fletcher Allen's motion to dismiss Counts One through Three for failure to state plausible claims for relief under the Parity Act is DENIED.

### C.  Count Four - Unlawful Modification of the Plan.

In Count Four, Plaintiff alleges that "[b]y its terms, the Plan requires concurrent reviews for all in-patient services and pre-approval (or prospective reviews) for certain out-patient services, but does not provide for concurrent review of any out-patient services." Doc. 1 at ¶ 62. Plaintiff further alleges that by the time of CIGNA's medical necessity review, Plaintiff "had been receiving routine, outpatient, out-of-network mental health services for approximately six months, and claims for those services had been paid in accordance with the Plan." *Id.* at ¶ 63. "By paying her claims for outpatient, out-of-network benefits without objection for almost six months, the Plan waived any right it might have had to conduct a pre-approval or prospective review of [Plaintiff's] routine

10

outpatient, out-of-network mental health office visits." *Id.* at ¶ 64. Thus, Plaintiff contends that "[b]y conducting the Utilization Review, when the Plan does not authorize concurrent review of any out-patient services, the Plan unilaterally and materially modified the terms of the Plan, in violation of ERISA." *Id.* at ¶ 65.

Fletcher Allen counters that while the Plan Document does not refer to the processes by which the Plan reviews repeated outpatient services for medical necessity, "[the Plan Document] does not contain all details of medical policy that guide utilization review decisions. Those are available upon request from [VMC or CIGNA]." (Doc. 7-1 at 3.) The CIGNA Guidelines state that outpatient services, such as psychotherapy, are no longer medically necessary and will not be covered where "[t]he individual's history provides evidence that additional outpatient therapy will not create further symptom relief and/or change." *Id.* at ¶ 23. Thus, the Plan, by its terms, provides for ongoing medical necessity reviews of outpatient mental health services which Fletcher Allen argues cannot be waived. As Fletcher Allen points out, the Plan's language trumps Plaintiff's characterization of it. *See Roth*, 489 F.3d at 511 (ruling "the contents of [a] document are controlling where a plaintiff has alleged that the document contains, or does not contain, certain statements."); *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (upholding dismissal of a claim where "a conclusory allegation in the complaint [was] contradicted by a document attached to the complaint").

In opposing dismissal, Plaintiff clarifies that she is not claiming that the requirement of medical necessity may be waived. *See* Doc. 16 at 25 ("[T]he defendants expend a good deal of energy addressing an argument that the plaintiff does not make—that the Plan has waived its right to contest medical necessity. To the contrary, C.M. acknowledges that the Plan provides benefits only for medically necessary services."). Rather, Plaintiff characterizes her claim as a contention that "the Plan has waived its right to employ certain processes used to determine medical necessity—specifically, the pre-approval or pre-authorization process for out-of-network mental health services—by not conducting the pre-approval review prior to the beginning of the course of treatment."

Doc. 16 at 25-26. She contends that because Fletcher Allen did not engage in any pre-approval process prior to C.M.'s course of treatment and did not engage in "concurrent" review because that is only permitted for inpatient services, it has waived the right to engage in those processes and cannot do so without impermissibly modifying the Plan.

The court agrees that dismissal is warranted for two reasons. First, Plaintiff's contentions regarding the terms of the Plan do not appear to be supported by the language of the Plan itself, and second, Plaintiff cannot amend her Complaint by way of an argument in her brief. A fair reading of Count Four is that Plaintiff is contending that Fletcher Allen has waived any right it may have had to review Plaintiff's ongoing treatment. *See* Doc. 1 at ¶ 64 ("The Plan waived any right it may have had to conduct a pre-approval or prospective review of C.M.'s routine, out-of-network mental health office visits."). If Plaintiff seeks to allege only that Fletcher Allen waived its right to certain *processes* that are somehow different from a medical necessity review, she may seek leave to amend her Complaint to assert that claim. As Plaintiff has alleged no other facts in support of her claim of waiver or unlawful modification of the Plan, Fletcher Allen's motion to dismiss Count Four is GRANTED.

### D. Count Five - Wrongful Denial of Benefits.

Under ERISA, a plan participant may bring a civil action in federal court "to recover benefits due to him under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (holding ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court.").

In Count Five of her Complaint, Plaintiff claims that assuming that the Plan's utilization review was proper, the services she requested "were at all material times, medically necessary and she has fully satisfied all of the criteria for medical necessity under [the CIGNA Guidelines]." Doc. 1 at ¶ 67. Thus, Plaintiff contends that "CIGNA's decision to the contrary, and its denial of benefits, was arbitrary, capricious, unsupported

by the clinical and scientific evidence, and contrary to generally accepted standards of medical practice." *Id.* at ¶ 68.

Fletcher Allen argues that Plaintiff has failed to exhaust her administrative remedies to the extent that she challenges denials of benefits after December 7, 2011. It argues that any claim for injunctive or declaratory relief remains a contract claim for benefits under § 502(a)(1)(B) of ERISA for which exhaustion is required. *See* Doc. 24 at 15 (citing *Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748, 755 (S.D.N.Y. 1997)). It thus "request[s] that all prayers for relief, other than for benefits for service before December 7, 2011, be stricken as not available under law." (Doc. 24 at 19.) Fletcher Allen bears the burden of establishing this affirmative defense. *See Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006) ("[W]e hold that a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense.").

While not conceding that exhaustion is required, Plaintiff asserts that she is "not now asking the [c]ourt to make medical necessity determinations as to post-December 7, 2011 claims; she is asking the [c]ourt to interpret the [Parity Act], which interpretation will apply to claim determinations." (Doc. 16 at 28.)

Because Plaintiff has now twice asserted that Count Five is limited to a claim for benefits prior to December 7, 2011 (Doc. 16 at 28; Doc. 25 at 10), and because Fletcher Allen seeks dismissal of a portion of Count Five only on failure to exhaust grounds, *see* Doc. 24 at 19, the grounds for Fletcher Allen's motion to dismiss Count Five have been negated. The court need not and does not reach the further question whether declaratory and injunctive relief may be available if Plaintiff prevails on her claims because Plaintiff has made it clear that her prayer for relief pertains to each of her claims.

For the reasons stated above, Fletcher Allen's motion to dismiss Count Five is DENIED AS MOOT.

### E. Count Six – Plaintiff's Retaliation Claim.

Count Six of Plaintiff's Complaint alleges that her mother, who is also a beneficiary of the Plan, has had her claims for mental health benefits subjected to

13

additional scrutiny, delaying payments of those benefits, in retaliation for Plaintiff exercising her rights and in violation of ERISA under 29 U.S.C. § 1140, which provides as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter.

29 U.S.C. § 1140.

To have standing to bring a claim, a plaintiff in a federal case must assert an injury-in-fact that is "concrete and particularized," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which ordinarily must be suffered by the plaintiff herself. *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) ("[A] litigant must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Although the Supreme Court has established a narrow exception to this doctrine where a plaintiff can show a close relationship with an injured third party and some obstacle to the third party's ability to protect his or her own interest, *see Powers v. Ohio*, 499 U.S. 400, 411 (1991), Plaintiff does not allege an obstacle that prevented her mother from bringing her own claim.

In response to Fletcher Allen's motion to dismiss, Plaintiff argues, among other things, that standing "is at best a question of fact that cannot be resolved on a motion to dismiss" (Doc. 16 at 33) and that the court should reasonably infer from the allegations in the Complaint that Plaintiff is financially dependent on her parents. Although Plaintiff is correct that at the pleading stage, the requirements for establishing standing are not rigorous, they are not nonexistent.

Under Article III of the Constitution, federal courts have jurisdiction only over "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504

U.S. at 560. If Plaintiff lacks standing, then the court has no subject matter jurisdiction to hear the claims. *See Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).

The "irreducible constitutional minimum of standing" contains three elements: (1) the plaintiff must have suffered injury in fact: an actual or imminent invasion of a legally protected, concrete and particularized interest; (2) there must be a causal connection between the alleged injury and the defendant's conduct at issue; and (3) it must be "likely," not "speculative," that the court can redress the injury. *Lujan*, 504 U.S. at 560-61. A plaintiff's burden to establish the elements of standing "increases over the course of litigation." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). At the pleading stage, plaintiffs need only allege facts that establish a plausible claim to standing. *See Bldg. & Constr. Trades Council of Buffalo, N.Y. and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) ("each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'") (quoting *Lujan*, 504 U.S. at 561).

Here, the Complaint is bereft of any facts other than an assertion that Plaintiff's mother is a beneficiary under the Plan and her mother has suffered additional scrutiny that has allegedly led to delays in payment although not to denials of coverage or payment. Plaintiff alleges no harm to herself as a result of this alleged retaliation. For purposes of pleading the requisite standing to assert her mother's claim, these allegations will not suffice. *See Banks v. Sec'y of Ind. Family & Soc. Servs. Admin.*, 997 F.2d 231, 239 (7th Cir. 1993) ("in order to have standing, the plaintiffs must also establish a 'fairly traceable' causal connection between the claimed injury and the challenged conduct of the defendant.") (citation omitted).

Because Plaintiff has failed to allege any injury she has suffered as a result of Fletcher Allen's handling of her mother's claims, Fletcher Allen's motion to dismiss Count Six is GRANTED. *See State of Connecticut v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110, 115 (2d Cir. 2002).

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS Fletcher Allen's motion to dismiss Counts Four and Six of Plaintiff's Complaint, and DENIES Fletcher Allen's motion to dismiss Counts One, Two, Three, and Five of Plaintiff's Complaint. (Doc. 7.) SO ORDERED.

Dated at Rutland, in the District of Vermont, this 30th day of April, 2013.

Christina Reiss, Chief Judge
United States District Court